IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JODY HALL                                                                                      PLAINTIFF

V.                                               CIVIL ACTION NO.: 1:08CV152-GHD-DAS

MISSISSIPPI BAND OF CHOCTAW INDIANS, ET AL.                    DEFENDANTS

## REPORT AND RECOMMENDATION

A hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), was held in this case on August 21, 2008, to determine if there exists a justiciable basis for the plaintiff's claims filed pursuant to 42 U.S.C. §1983. An *in forma pauperis* complaint may be dismissed if it is determined that the allegation of poverty is untrue, or if the action or appeal is frivolous, malicious, fails to state a claim for which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2).

The complaint alleges that while confined at the Choctaw Justice Complex Adult Detention Center, the plaintiff was "assaulted" by Sheriff Jerry Palmer and two unknown jailors. Specifically, the complaint states that while the plaintiff was restrained in a "disciplinary chair" and shackles, officers punched him in the back of the head two times and twisted his hand. The officers also placed him under a vent in an "unsanitary" drunk tank and left him there for hours. The complaint alleges that after the plaintiff became "sick," the officers refused to give him medical treatment. The complaint names as defendants the Mississippi Band of Choctaw Indian's Justice Complex and Sheriff Jerry Palmer.

During the *Spears* hearing, the plaintiff testified that he was placed in a cold drunk tank on June 15, 2006, and remained there for eight days before his first court appearance. Following the court appearance, he was returned to the drunk tank and, by that time, was already sick with a "head cold." The plaintiff testified that he requested to go to the Choctaw Health Center for treatment but jail officials denied his request. Jail officials offered him medicine, however, but he refused to take it because it was some sort of mixture. The plaintiff said he refused the "dose" because of his preexisting fear of being poisoned.

The plaintiff further testified that on June 21, 2006, Sheriff Palmer took him to a visitation room and pushed him "a little bit." Following this the plaintiff and Sheriff Palmer were involved in an altercation. The plaintiff said Sheriff Palmer gave him the options of going "back to where he had come from," taking the disciplinary chair, or taking a beating. The plaintiff refused all options and began to argue with Sheriff Palmer. The plaintiff said officers then strapped him into a disciplinary chair and placed him inside the drunk tank. The plaintiff said when the officers left and closed the door, he managed to free himself from the chair and threw it away from himself. When the officers realized the plaintiff had gotten out of the chair, one of the unknown officers returned to the room and grabbed him. Then, Palmer and the other officer entered with another disciplinary chair. The plaintiff said the officers placed him in the disciplinary chair and tried to strap him in. He said he struggled with the officers and spit in their faces as they tried to restrain him in the chair. The plaintiff said Sheriff Palmer hit him in the back of the head twice, but he couldn't do anything about it because the other officers were holding his hands down. The plaintiff said that once the officers had strapped him in and cuffed

his hands, Sheriff Palmer moved him directly under the air conditioning vent, and the three officers left the room. The plaintiff said the officers left him there with cold air blowing down on him for at least an hour and a half. The plaintiff said he complained that he was cold and asked to speak with a police officer. He said an officer came in and took his statement regarding the incident with Sheriff Palmer and the other two officers. The plaintiff said that same day, he was removed from the tank and allowed to take a hot shower and go straight to bed.

As an initial matter, any claims against the Mississippi Band of Choctaw Indians Justice Complex should be dismissed because it is not a suable entity separate from the Mississippi Band of Choctaw Indians. And, Indian tribes are immune from suit under the doctrine of tribal sovereign immunity. *See Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.,* 523 U.S. 751 (1998). This immunity applies to governmental and commercial activities whether on or off the Indian reservation. *Id.* at 760. Immunity also extends to entities that are agencies of the tribe. *Bassett v. Mashantucket Pequot Tribe,* 204 F.3d 343, 358 (2d Cir. 2000). Having liberally construed the complaint, the Court will now address the plaintiff's claims.

***Denial of Medical Care***

In order for the plaintiff to prevail on his Eighth Amendment claim for delay and denial of adequate medical care, he must allege facts which demonstrate "deliberate indifference to . . . [a] serious medical need[] . . . [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors in their response to the prisoner's needs or prison guards in intentionally denying or delaying access to medical care. . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). However,

3

not every claim of inadequate or improper medical treatment is a violation of the Constitution, *Estelle*, 429 U.S. at 105; nor does a disagreement with a doctor over the method and result of medical treatment require a finding of deliberate indifference, *Spears v. McCotter*, 766 F.2d 179 (5th Cir.1985). Merely alleging that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir.1991); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993)("negligent medical care does not constitute a valid section 1983 claim."). Further, medical records showing sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995).

In this case, the plaintiff's claim that he was denied medical treatment is frivolous. He testified that he acquired a "head cold" because it was too cold in his cell. The plaintiff has not alleged a serious medical need. Moreover, the plaintiff admitted that prison officials offered him medication and that he refused it because of his pre-existing fear of being poisoned. These facts contradict any claim of deliberate indifference on the part of jail officials. Accordingly, the plaintiff's medical claim should be dismissed.

*Excessive Force*

To prevail on an excessive-force claim, a plaintiff must establish (1) that force was not "applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm," and (2) that he suffered some injury as a result. *See Eason v. Holt,* 73 F.3d 600, 601-02 (5th Cir.1996) (citing *Hudson v. McMillian,* 503 U.S. 1, 7 (1992); and *Jackson v.*

4

*Culbertson,* 984 F.2d 699 (5th Cir.1993)); *see also Siglar v. Hightower,* 112 F.3d 191, 193-94 (5th Cir.1997) (referencing 42 U.S.C. § 1997e(e), which precludes a civil action by a "prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury" in connection with an excessive-force claim). Relevant factors to consider in evaluating an excessive-force claim include: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *See Hudson,* 503 U.S. at 7;*Gomez v. Chandler,* 163 F.3d 921, 923 (5th Cir.1999).

The plaintiff in this case has failed to allege facts sufficient to state an excessive force claim. He claims Sheriff Palmer pushed him "a little bit" and hit him in the back of the head twice; however, not every malevolent touch by a prison guard gives rise to a constitutional violation under the applicable standard. *See Hudson,* 503 U.S. at 9. In that respect, the constitution excludes from recognition *de minimis* uses of physical force, provided that the use of force is not of a sort " 'repugnant to the conscience of mankind.' " *Id.* at 9-10 (citation and quotation omitted). Here, the plaintiff's own allegations show that jail officials applied no more force than necessary to restore discipline. The plaintiff admits that he was belligerent and argued with the officers, resisted their attempts to restrain him, and even spit in their faces. Ultimately, the plaintiff has alleged absolutely no injury stemming from the incident. Accordingly, the plaintiff's allegations fail to state a constitutional claim.

5

*Inhumane Conditions*

Lastly, to the extent the plaintiff alleges that jail officials subjected him to temperature extremes that violated his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment, his claim fails. The plaintiff claims Sheriff Palmer and the other officers placed him under a cold air conditioning vent and left him there for an hour and a half before another officer responded to his complaint of being cold. "The Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones...." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). There are two requirements that must be met to show a prison official violated the Eighth Amendment. The first is an objective requirement necessitating that the inmate allege a sufficiently serious deprivation. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to constitute cruel and unusual punishment. *Farmer*, 511 U.S. at 834. The second requirement is that a prison official have a "sufficiently culpable state of mind" or one that is "deliberately indifferent" to inmate health or safety. *Id.* The second subjective component need not be examined if the plaintiff does not objectively demonstrate a sufficiently extreme deprivation of any minimal civilized measure of life's necessities. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998).

The plaintiff in this case has failed to objectively demonstrate a sufficiently extreme deprivation, so the Court does not have to address the subjective component of his claim. The plaintiff has alleged that he was left under an air conditioning vent for no longer than a couple of hours. Though these conditions may have been uncomfortable, they were short lived and simply

fail to implicate a serious deprivation of minimal life necessities or any basic human need. Therefore, it is my recommendation that the plaintiff's entire complaint be dismissed as frivolous and for failure to state a constitutional claim.

The parties are referred to Local Rule 72.2(D) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained. The parties are warned that any such objections are required to be in writing and must be filed within ten days of this date. Failure to timely file written objections to the proposed findings, conclusions and recommendations contained in this report will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Respectfully submitted this 4th day of November, 2008.

                                              **/s/ David A. Sanders**
                                              **UNITED STATES MAGISTRATE JUDGE**